Bickerstaff v. Vincent Lucarelli Mr. Lucarelli Mr. Lucarelli, et al. Oral argument not to take 15 minutes for defendant and 15 minutes to be shared by defendant. Mr. Howell, et al. Good morning, your honors. May it please the court, I'd like to reserve 5 minutes for rebuttal. Your honor, this is a fairly straightforward issue that we have before the court today. It involves whether or not the district court properly applied the standard as stated by the United States Supreme Court in Twombly and Iqbal in dismissing the plaintiff's complaint on a 12B6. This court has held fairly recently in L. Helani v. Huntington Bank that the Twombly-Iqbal standard is not to signify the death of notice pleading. That Rule 8 still applies and that although Twombly and Iqbal has raised the bar for pleading, the bar is still low. Plaintiff has essentially alleged facts in the complaint, although there is boilerplate language which Twombly and Iqbal does not state that a complaint cannot have. There are facts that create a plausible inference that plaintiff was essentially arrested by defendants or charged by defendants without any type of probable cause based in bad faith on an improper motive. That it was essentially a fraudulent arrest. Didn't Jasmine Harris file a formal complaint against your client for harassment? She did, your honor, but we allege that she only did so after calling defendant Lucarelli, who was her lover at the time that we alleged, and asking him what to do. And that defendant Lucarelli then called our plaintiff, Ms. Bickerstaff, berating her on the phone for contacting Ms. Harris and referring to Ms. Harris as his client. At that point, Ms. Bickerstaff then called defendant Lucarelli's direct supervisor to explain why she was contacting Ms. Harris, who she worked for as a private investigator. And only after that point did defendant Lucarelli then, we believe we alleged in concert with defendant Hill and Legg, contacted the FBI and began criminal investigation into Ms. Bickerstaff's alleged conduct. Right, but the prosecutor was not in Mr. Lucarelli's pocket, was he? No, we did not allege that. We allege that Mr. Lucarelli and the other defendants essentially withheld that information from the prosecutor and the grand jury, that they presented a case that they knew there was no probable cause to support that was fraudulent, and they did not. But the one who presented the testimony at the grand jury was Officer McDuffie, wasn't it? Correct. She was the grand jury liaison. We allege specific text messages between defendant Lucarelli and Ms. McDuffie that explain that the plaintiff was a private investigator, creating the inference that she's poking around into investigations that were made prior by defendant Lucarelli, and that defendant Lucarelli left Ms. McDuffie a note. What's the significance of Bickerstaff being a private investigator? I'm not saying that all private investigators commit crimes, but this is exactly the kind of thing that police would be worried about, wouldn't it? Our complaint essentially alleges that Ms. Bickerstaff, as a private investigator, that the sole motive to charge her with these crimes was to prevent her from finding out about Lucarelli's inappropriate sexual relationship with Ms. Harris, and thereby potentially finding out about other relationships that he had with other victims of crime, as well as other cover-ups that were going on in the Fifth District in the Cleveland Police Department. You know what puzzles me, though, is in your complaint, in the complaint you quote from a conversation, I guess, or a text message conversation between Lucarelli and McDuffie, right, a few days before the grand jury proceeding. And in there it says, on April 4, 2012, Lucarelli stated, okay, thank you. If they no-bill it, don't worry about it. And then defendant Lucarelli indicated on a note in the file that he did not want this matter to be presented to the grand jury. Well, that seems contrary to your position. I mean, your position is, oh, Lucarelli wanted your client indicted? In fact, it sounds like, no, he didn't want her indicted. I believe that creates a plausible inference that Lucarelli, although he didn't want her indicted, he thought charging her would be sufficient to prevent her from talking with Ms. Harris further. As if they no-bill it, don't worry about it. Well, no-bill means no indictment. Well, because you just said, what's the difference between charging and indictment? I thought the indictment is the charge. Correct. I mean, well, I would answer that with, why would a police officer who had reason to believe that a crime was committed say, I don't care if she's charged or not? I mean, I think that creates an inference that Ms. McDuffie knew that there was no probable cause to support this. It doesn't sound more like that he says, here's the information. If it turns out it's not good enough for an indictment, it's okay with me. Again, he might have been lying in it, but that is not plausible. Well, Your Honor, I think that goes more to the weight of the evidence than it does at the pleading stage. Whether or not, what interpretation or what weight you give that evidence, I think we've created a plausible inference to move forward and to be able to conduct discovery and figure out exactly what was going on there. We don't have access to the arrest file or to the grand jury proceedings prior to going through discovery, so there's no way of knowing whether or not or what McDuffie knew at that time without alleging it, based on the factual information that we have. Your general problem, as I see it, is that an indictment presumptively means there's probable cause. Correct. You proceed at a criminal accusation against your client. How do you overcome? What have you done in your complaint to overcome the presumption of probable cause? The district court, and I'd like to address the district court, cites a non-reported case out of the northern district called Diver v. Dobson, which, of course, is not binding on this court. And I think that, one, it's distinguishable, and two, if we were to apply Diver to the facts in this case, it would create a very bad precedent. I think the Diver case essentially involved a claim where there was a mishandling of evidence. There was no evidence to suggest that the officers in that case had an improper purpose, that they were acting in bad faith, or anything like that. We have alleged that here. And if you're going to allow an officer who essentially is fraudulently charging a plaintiff to then, as long as he does a good job of hiding that information from the grand jury or the prosecutor, he can then hide behind that indictment and there are no consequences. The fraudulence here, though, it sounds to me, and help me here, is that most of what you're saying is kind of not presenting the grand jury with impeaching material or motivation material as opposed to that something affirmatively was told to the grand jury that was untrue. Well, I think when I use the word fraudulent, I think what I'm suggesting is that he did not disclose to the grand jury or the prosecutor. And what we've alleged is his sole motive for making the arrest. This is Luccarelli, not McDuffie. Well, we believe that we created an inference that McDuffie, at the very least, knew that this was a bogus arrest, that there was not probable cause to support it. Now, how are we to know what exactly she knew about his improper relationships with victims of crimes? We did not allege that in the complaint, but we believe it creates an inference. I guess help me here in terms of the motivation versus the fact or the charge. If the charge is somebody broke the windows in my tenant's house, now the reason I'm pressing this is I'm actually running a crack house in that tenant's house and I don't want people breaking windows and looking in. But can't I still charge him with destruction of property? Well, I think breaking a window and what we've alleged is Ms. Bakerstaff, all she did was contact Ms. Harris and ask to speak with her. But what would be the motivation of Ms. Harris to file a formal complaint against your client? I mean, Luccarelli didn't put her up to that. Oh, I believe we did allege that he did put her up to that, that she called him after she was contacted by Ms. Bakerstaff and Luccarelli told her to file the complaint and that she was going to prevent our plaintiff from finding out about their relationship and other relationships that he was having. But, I mean, Ms. Harris, if she didn't feel your client was harassing her, why wouldn't she? She could have just let your client interview her. Your client was investigating for some client charged with. . . We alleged in the complaint that initially she did allow our client to speak with her. In fact, she even returned a phone call from our client to speak with her. And then after Ms. Bakerstaff started questioning her is the point where she contacted Defendant Luccarelli. And then Luccarelli then initiated, after our plaintiff had contacted his supervisor to explain what she was doing, he then and only then initiated after that these charges. I believe I'm up on time, but if anything else. . . Yeah, you're claiming, among other things, that the trial court abused its discretion in regarding the amount of time provided for your client to conduct discovery before it terminated the discovery period and ruled on the motion for summary judgment. But you don't actually discuss in your brief the erroneous nature of the summary judgment, except in relation to saying that you needed more discovery. Right. So I suppose an argument could be made that you might have waived the summary judgment argument by not making it in your brief. What would you say about that? Well, I would say that, one, only a few claims against Luccarelli and no other defendants made it even through to summary judgment. But I would also say that we had asked the court twice for additional time for discovery after the ruling on the motions to dismiss. The district court dismissed the case against Luccarelli on April 2nd and discovery closed on April 10th, giving us eight days. We did not respond to the motion for summary judgment because at that time we were really in between a rock and a hard place. We asked the judge on a 54B motion if we could appeal the rulings to dismiss right then and there. He denied that. So we were really, do we fight summary judgment, take this to trial when the guts of our complaint has been dismissed out, or do we take it on the chin in summary judgment and then thereby appeal the rulings to dismiss and the ruling for summary judgment right away? I think our problem with the summary judgment ruling is more along the lines that we did not have enough time to conduct discovery, and that's why that ruling should be overturned. All right. Thank you. Counsel, you'll have your time for rebuttal. How do you plan to divide your time? I'm going to divide it equally. Thank you. Good morning, please, the court. My name is Catherine Miley, and I represent Vincent Luccarelli in this case. I'm going to jump around a little bit. You mentioned summary judgment. As you mentioned, the plaintiff did not file an opposition to summary judgment, nor did they file a Rule 56 affidavit requesting any additional discovery or identifying what discovery was necessary. Therefore, the case law is pretty clear that it was waived at the trial court for not raising it below. In addition, as you pointed out, it wasn't raised in the appellate brief, other than I think there's a passing reference to it in the introduction and in the conclusion. But other than that, the merits of summary judgment are not discussed in the brief, and we would argue it's been waived. The issue of discovery keeps coming up. This is not a normal case where there's a motion to dismiss and it's granted and no discovery was done. The motions to dismiss were filed. The plaintiff had from August until April to conduct discovery. The judge granted the motions in whole as it relates to Ms. Dinehart's clients and in part as it relates to mine in April. Discovery was conducted. Depositions were taken. Written discovery was exchanged. There were discovery motions that were exchanged and extensions granted. There was adequate opportunity to conduct discovery. There are no motions to compel at the trial court. There's not a motion. I don't have the docket in front of me, but I don't believe there's a motion for an extension filed after the rulings on the motion to dismiss. They had all been filed before, and, again, we were conducting discovery throughout. There's not anything the plaintiff, even in the brief today or argument today, the plaintiff has identified what the plaintiff was denied. There's not been any, like I said, there's no Rule 56 affidavit saying, these are the five things that I should have been granted. They had an opportunity to petition the court to order the grand jury transcript. They did not do so. They had the criminal file. I believe they have the criminal file from Ms. Bickerstaff's client that she was originally investigating. They could have ordered the grand jury transcript. Would that have been opposed, or is that normal in this type of case, to permit the plaintiff to get the grand jury transcript? I probably would have opposed it. The judge probably would have granted it. They would have needed an order. But they try so we don't know. It never happened. They would have needed an order for the common police clerks to give it to them, obviously. That takes us to the motions to dismiss. The complaint has a lot of facts in them, very salacious. Most of them don't have anything to do with Brenda Bickerstaff. The statements that relate to Ms. Bickerstaff are more legal conclusions. Ms. Bickerstaff is convinced that somebody must have lied to the grand jury about her because she was indicted. But she can't point to anything. She doesn't point to any evidence that was submitted. She doesn't point to any testimony. As somebody pointed out, I don't remember who. Mr. Luccarelli did not testify. Sergeant McDuffie, I think it is, testified to the grand jury. So the facts don't support the claims. You need something to overcome the inference that the indictment would indicate probable cause. We're also in a unique position that since we also had summary judgment and did depositions, we know little more facts that are outside of the complaint. But as you stated, the victim, Ms. Harris, came to Mr. Luccarelli and said, she's calling me. She did a statement. It got processed up through the chain, and the prosecutor elected to present it to the grand jury. The grand jury indicted. There's no evidence or facts, other than counsel's legal conclusions, that obviously somebody presented something false to the grand jury or there wouldn't have been an indictment. The two claims against Mr. Luccarelli that were dismissed on the motion to dismiss were retaliatory prosecution. Allegedly, the plaintiff claims Mr. Luccarelli had a First Amendment motivation in prosecuting her. But then on the other hand, what they keep saying is he was actually trying to cover up his own nefarious actions. We disagree with the facts of the nefarious actions, but that's what's pled. But as the court was pointing out, there's notes referenced in the complaint saying, you don't really need to worry about it if this doesn't get indicted. I don't really care, which I believe it was Judge Boggs pointed out that kind of counters. If he's doing this to cover himself up, he's going to want her indicted. I also don't think it's an incredibly logical jump that if he's trying to cover up a relationship, that drawing attention to it by prosecuting her really is covering up a relationship. So the retaliatory prosecution, there's really not a First Amendment motivation pled. But in addition, the indictment is again fatal to the retaliation claim. The second claim that was dismissed for Mr. Luccarelli was couched two ways, reckless willful wanton conduct. That's not a cause of action in Ohio, it's just an element of community analysis, so that was properly dismissed. And the second claim was the state sham legal proceeding cause of action, which has a civil and a criminal component. But again, the indictment proves to be fatal to that cause of action as well. So again, while there are very salacious, I will say, facts pled in the complaint, most of them don't relate to Ms. Bickerstaff. There weren't facts to support the claims against Mr. Luccarelli. They were just counsel's legal conclusions as to what his motivation must have been. Again, it's repeated that they claim that someone presented false evidence to the grand jury. Who presented false evidence? What did they present? There's nothing that's factual that's alleged anywhere in the complaint. Was McDuffie the only person who testified before the grand jury in this case? She was. On smaller cases that are simple, and this is outside the complaint. It's more in the depositions later. They have grand jury liaisons, and they'll just hand them the file. And if it's complicated, she hands it back and says, do it yourself. But yes. We know if there was any false information, we know who presented it. And if you got the testimony, you could see what it was, whether they were conveying information from a particular person. Right, and they did not depose McDuffie. But the reality is she's going to be limited to the file. They had the file, so they know what she would have had in front of her. When you say the file, what do you mean there? They would have had the file on prosecuting Ms. Bickerstaff, which in this case is really the victim's statement, the complaint. And they got that from discovery? I'm sure I did it on voluntary disclosure, but either way, they got it one way or the other. Did anybody depose the victim witness, Ms. Harris? No. You think that would be a source of, did she have a legitimate belief of harassment or was she just trying to get her boyfriend, your client, to cover up? My client was deposed, and he indicated they did not have a personal relationship. They were friendly. That's the only evidence. And that was never filed because plaintiff didn't oppose summary judgment. So there's an affidavit attached to summary judgment, and I don't think we had, I don't remember if we addressed that. Are some of the salacious allegations in the complaint along the lines of his relationship with Harris? They are. But you're just saying they're not supported by any other documentation. Is that what you were saying? Well, for purposes of 12b-6, there's a lot of salacious allegations in the complaint. Some are true. The stuff about Ms. Harris we know later is not true. But it doesn't support the claim. They're throwing smoke in it. There's arguments about the other officers covering up for shootings and other missed paperwork. So if you throw enough smoke in it, they're all evil, and therefore my case must be good. Well, that doesn't make all those other things relating to Ms. Baker's staff. Unless you have any other questions, we just ask you to affirm, and I'll leave the rest to Ms. Dinehart. Thank you. Good morning, Your Honors. My name is Jillian Dinehart. I'm here on behalf of the city of Cleveland as well as defendants Hill, Legg, and McDuffie. So what I would first like to represent here in front of the Court is this is raised on Iqbal and Twombly considerations, and there are at least three different sets of facts that are never alleged in the complaint that would be necessary to really prove causation here. And one of that is that the individual defendants that I represent, again, Hill, Legg, and McDuffie, ever even knew that Detective Lugarelli had a relationship with Jasmine Harris. That is nowhere alleged in the complaint. Further, it's nowhere alleged in the complaint that the defendants knew that Lugarelli was pursuing charges against Brenda Baker's staff in order to prevent Ms. Baker's staff from finding out about his relationship with Jasmine Harris or with any other victim as alleged in the complaint. And finally, it's not alleged that... interactions with Legg. That is true, but it is not alleged that Legg knew that there was a conspiracy to cover up the... And do you represent Legg? Yes, sir, I do. Also, it's not alleged that defendants knew that Jasmine Harris was the victim of Brenda Baker's staff's alleged crime. Really what is alleged here is that had defendants Legg and defendants Hill come out and either disciplined or investigated defendant Lugarelli for any of the previous relationships, and again, not talking about Jasmine Harris, talking about, I believe her name is Heaven Smith in the complaint, then Detective Lugarelli would have been disciplined, and he never would have been in the position to investigate or bring charges against Ms. Baker's staff. And that is just too far removed from the actions that are alleged in this complaint. An awareness of general misconduct is insufficient to impose liability on supervisory and non-supervisory personnel under 1983, and that's stated in Sheehy v. Luttrell. That is exactly what's happened here. There's no allegations that anyone knew about this Jasmine Harris case, just that they knew about what was going on in defendant Lugarelli's life beforehand. Ms. Miley kind of thoroughly went through the indictments and how that kind of kicks us out of the malicious prosecution as well as abusive process, but I would like to address the text messages between defendant McDuffie and defendant Lugarelli. I think it is very persuasive to show that the only text messages that the appellant puts forward in the complaint are those saying, don't worry about it, Detective McDuffie, if you don't get this indictment. I know personally when I delegate work to others and I'm not doing it myself, as was the case here when presenting something to the grand jury, I'm not going to put so much pressure on the person I delegate it to if I'm not willing to do it myself. There is no indication in this statement from the text messages with Detective McDuffie that she knew anything about Detective Lugarelli's past or even knew that there were facts that should have been told to the grand jury about Detective Lugarelli's past or his alleged involvement with Jasmine Harris. There is nothing in the complaint to support that she knew anything prior to going into that grand jury other than that this was a run-of-the-mill criminal investigation. Also, I would like to address the conspiracy. As far as McDuffie's involvement, as Judge Boggs pointed out, she does actually, or excuse me, it might have been Judge Gilman, actually does work expressly against Detective Lugarelli's wishes. If he truly did put a note on the file, please don't indict this, or through the text messages we know he said don't worry about it if this doesn't result in an indictment. She went forward with it anyway. That does not support a conspiracy with the same motivation with Detective Lugarelli. Again, I would like to stress that it would just be a leap of logic in causation that had Defendant Slagg or McDuffie, had she known, or Defendant Hill, actually reported any of the prior conduct of Detective Lugarelli, that he would have been dismissed from the Cleveland Police Department and never would have been in a place to raise these complaints against Ms. Bicker's staff.  There is no alleged pattern of abuses against the city of Cleveland. There is one instance of an alleged constitutional violation, and that only involves the participation of four officers at most. There's no allegation of a widespread involvement, and in fact this is limited to one police department district of five within the city of Cleveland. Again, I would say that causation is again an issue, and as Ms. Miley addressed, Ms. Bicker's staff is essentially saying that because I was harmed, there must be a policy that resulted in my harm, even if that policy is not expressly stated. I don't have much more to address, Your Honors. I feel as though Ms. Miley really covered the rest of it for me. If you have any questions, I'd be happy to answer those. Thank you, Counsel. Thank you very much. Five minutes for rebuttal. First, I'd like to start with many of the arguments raised by both Ms. Steinhardt and Ms. Miley go to the weight of the evidence and what certain things are more likely to show or not. At the pleading stage, we're required to take the allegations that plaintiff has made as true and decide whether or not they create a plausible inference that there's a claim. I think our complaint certainly has done that. With regard to the discovery issues, I think that as far as it goes to the motions for 12b-6, that's irrelevant because discovery doesn't come into play when deciding a motion for 12b-6. Now, as far as the 56-F affidavit for the discovery to the motion for summary judgment, plaintiff did not file a 56-F affidavit. But there is case law out there that if a motion for an extension was denied, that that's sufficient to keep an appealable issue. The parties initially all jointly moved. And by way of background, let me say that these motions to dismiss were pending for a period of over six months. What plaintiff was trying to do was to hold off on conducting a ton of discovery until we knew what counts in our complaint were going to be viable. And Defendant Luccarelli, he was in default. He had not even appeared until December. All the parties moved for an extension, actually moved the court to hold the discovery dates in abeyance until the motions to dismiss were decided on. That motion was granted in part, and it was granted until February 27th, only about two months after Luccarelli actually appeared in the case. And after that point, the parties then again all moved for an additional 90 days, which was granted in part. We only got about 60 days, and the court indicated on the docket that no further discovery would be granted. Now, are we then required, after the court has told all the parties there will be no more discovery, to then move again and ask them for discovery? I mean, I think there is an appealable issue for the summary judgment there. And as far as no improper conduct on behalf of Hill or Legg, the district court found that plaintiffs plausibly pled that there was a plan between Defendants Hill, Legg, and Luccarelli to cover up for misconduct. So then how you go and find that there wasn't enough evidence to point to an ulterior motive for an abusive process? To cover up Luccarelli's. To cover up departmental misconduct between all three of them, it's alleged in the complaint, and there are some specific facts to support that. All three here being Luccarelli, Legg, and Hill. Hill. Correct. But not McDuffie. And I will be the first to admit that the allegations in the complaint against McDuffie are not as detailed as the other two, because there simply aren't the text messages that we had. But if we were able to conduct discovery, I think we would have been able to find more and been able to oppose a motion for summary judgment. Nothing prevented you from asking for more time to discovery when it turned out that the judge didn't make his ruling on the Rule 12b-6 motion until, what, a week or two before the cutoff? He clearly indicated, and it's on the docket, that no further discovery. Yeah, but that was before he didn't know how long it was going to take him to finally rule on the 12b-6, right? By the time he said no further, that didn't like, don't you even dare come with another motion to extend discovery. Lawyers ask for reconsideration all the time. Correct, Your Honor. People have temerity asked to en banc panel decisions. I wasn't involved in those discussions, but it is my understanding that the court made it very clear to the parties that there would be no more discovery. And, again, I would argue that the discovery issue is only relevant to the motion for summary judgment and is not relevant to how this case was decided on the 12b-6. If you have any further questions, thank you. The case will be submitted.